O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14

CIVIL MINUTES - GENERAL

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):     Attorneys Present for Defendant(s):

Not Present                           Not Present

**Proceedings:**     (In Chambers) Order Granting In Part and Denying In Part Defendant TCS Education System's Motion to Dismiss

     Pending before the Court is TCS Education System's Motion to Dismiss Southern California Institute of Law Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court held a hearing on the matter on April 4, 2011. After considering the moving and opposing papers, as well as the arguments presented at the hearing, the Court GRANTS in part and DENIES in part TCS Education System's Motion to Dismiss.

I.     Background

     This cases arises from an alleged merger that went sour between TCS Education System ("TCS"), a "multi-million dollar corporation engaged in the rapid acquisition of schools and colleges in California and elsewhere," and Southern California Institute of Law ("SC Law"), a "small State-Bar accredited, evening law school with a twenty-five year history of serving working class adults in the tri-county area of San Luis Obispo, Santa Barbara and Ventura Counties." *Compl.* ¶ 1. SC Law prides itself on maintaining "perhaps the lowest" tuition rate in California, specifically designed "for the benefit of working adults who seek a rigorous academic environment that is affordable, flexible and offers small class sizes." *Id.* ¶ 3.

     To foster negotiations and complete an acquisition, SC Law allegedly provided "unfettered access to its Dean, faculty and confidential files," after a "Confidentiality and Non-Disclosure Agreement" was signed by representatives of both SC Law and TCS. *Id.*, Ex. 1 (the "Non-Disclosure Agreement" or "Agreement"). Among other relevant clauses, the Non-

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

Disclosure Agreement provided that TCS, as the "receiving party," was not to "use, reproduce, or directly or indirectly disclose or allow access to the [confidential] information except as required to facilitate the [transaction]." *Id.*, Ex. 1, ¶ 1. In addition, TCS was required to "protect the confidentiality of the Information . . . with at least the same diligence and care as would be required of [TCS] if it were a fiduciary of [SC Law], that is the utmost good faith and care for the interests of [SC Law]." *Id.*, Ex. 1, ¶ 2. However, "nothing in the [Non-Disclosure] Agreement shall be deemed to inhibit or prohibit either party from pursuing business opportunities or other arrangements or endeavors of any kind so long as the terms and provisions of [the] Agreement are maintained inviolate." *Id.*, Ex. 1, ¶ 10. In the event that the transaction was terminated, "for any reason," TCS agreed to "promptly destroy and certify the destruction to [SC Law] of all Information belonging to [SC Law]." *Id.*, Ex. 1, ¶ 5.

A few months after releasing various sources of confidential information including SC Law's corporate tax returns, balance sheet, personnel files, and its highly guarded "Acquisition Profile and Initial Strategy for Regional Accreditation," *id.* ¶ 20, a representative from TCS e-mailed SC Law's Dean to inform SC Law that "an arrangement that would be acceptable to [TCS] would be very disappointing to your board. As a result . . . we think it would be best for TCS to take a pass on the [merger] at this time," *id.* ¶ 25. Not long after, it was announced that instead of affiliating with SC Law, TCS obtained approval from the California State Bar Committee of Bar Examines to affiliate with SC Law's only competitor in the region, Santa Barbara & Ventura Colleges of Law ("SB&V"). *See id.* ¶¶ 3, 28. According to SC Law, TCS misappropriated highly guarded secrets in violation of the Non-Disclosure Agreement in order to "affiliate with [SC Law's] sole competitor in the region." *Id.* ¶ 1.

As a result of TCS's conduct, SC Law filed this case on October 25, 2010 against TCS, David J. Figuli ("Figuli"), and Global Equities Ltd. doing business as Higher Education Group ("Global Equities") (collectively, "Defendants"). Figuli is the "CEO" of Global Equities, which TCS retains "to assist it in targeting potential acquisitions or affiliations with schools and colleges and [in] structuring its deals." *Id.* ¶ 7. The Complaint asserts ten causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of fiduciary duty and aiding and abetting; (4) negligent misrepresentation; (5) misappropriation of trade secrets as defined by California Civil Code § 3426.1(d); (6) attempted monopolization in violation of § 2 of the Sherman Antitrust Act; (7) monopolization in violation of § 2 of the Sherman Antitrust Act; (8) conspiracy to monopolize in violation of § 2 of the Sherman Antitrust Act; (9) violation of California's Cartwright Act; and (10) violation of California's Unfair

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

Competition Law ("UCL"). All of the causes of action are asserted against all Defendants, except one (breach of contract), two (breach of implied covenant of good faith and fair dealing), and six (attempted monopolization of trade secrets), which are asserted against only TCS. Although SC Law seeks monetary damages, the primary relief requested is a permanent injunction enjoining Defendants from "taking any further steps to pursue or implement an affiliation" between TCS and SB&V.

On December 23, 2011, TCS filed the pending Motion to Dismiss SC Law's Complaint under Federal Rule of Civil Procedure Rule 12(b)(6). For the reasons that follow the Court GRANTS in part and DENIES in part TCS's Motion.

II.     Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim to relief. *See id.*

In evaluating a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id.* at 1950. First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1950. Despite the liberal pleadings standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *See id.*

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

Finally, the Court notes that in ruling on a motion to dismiss, the Court may consider documents outside the pleadings without the proceeding turning into summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). In particular, the Court may consider (a) documents that are "properly submitted as part of the complaint,"(b) documents on which plaintiff's complaint necessarily relies and whose authenticity is not contested, and (c) "matters of public record" of which the court may take judicial notice under Rule 201 of the Federal Rules of Evidence. *See id.* (internal quotations omitted).

III. Discussion

Defendant moves to dismiss Plaintiff's Complaint in its entirety. As a preliminary matter, the Court notes that it can properly consider the "Confidential and Non-Disclosure Agreement" that is at the center of this lawsuit as it is "properly submitted [by SC Law] as a part of the complaint." *See Lee*, 250 F.3d at 688-89.

    A.    Breach of Contract

SC Law's first claim for relief is for breach of contract.[1] SC Law alleges that TCS breached the Non-Disclosure Agreement in a number of different ways, including keeping confidential information in its possession after the termination of the relationship, misusing confidential information to facilitate the TCS/SB&V transaction, refusing to certify the destruction of the confidential information, failing to protect the confidentiality of the information "in at least the same manner as a fiduciary of [SC Law] would do," and for violating the Non-Disclosure Agreement's covenant not to compete against SC Law with information obtained pursuant to the Agreement. *Compl.* ¶ 44.

TCS seeks dismissal of SC Law's Breach of Contract claim in its entirety, but focuses only on two aspects of the claim: the purported covenant not to compete and TCS's alleged misappropriation of trade secrets and confidential information. *See Mot.* 8:3-16, n.2. Specifically, TCS insists that "[t]he premise of plaintiff's breach of contract claim is, in part, that the [Agreement] precluded TCS from deciding to partner with another law school," which belies the language of the Non-Disclosure Agreement permitting either party to pursue other business

---

[1] The Non-Disclosure Agreement includes a choice of law provision specifying that California law governs. *See Compl.*, Ex. 1, ¶ 8.

Case 2:10-cv-08026-JAK-AJW Document 23 Filed 04/05/11 Page 5 of 16 Page ID #:222

**O**

**#14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

opportunities, arrangements, or endeavors of any kind "so long as the terms and provision of this Agreement are maintained inviolate." *Id.* 8:7-16.

TCS's argument overly simplifies the Non-Disclosure Agreement, however, and the ways in which it was allegedly breached. Contrary to TCS's position, SC Law's allegations are not merely that TCS breached the Agreement by pursuing business opportunities with SB&V, but rather that TCS breached the Agreement by using SC Law's confidential information *in order to* pursue business opportunities with SB&V. The distinction is important because the Non-Disclosure Agreement prohibits the latter, but, as TCS correctly points out, not the former. Thus, SC Law's allegations that TCS misused confidential information in pursuit of other business opportunities defeats TCS's argument that there is no broadly worded non-compete provision that could serve as the basis for a breach of contract claim.[2]

Moreover, TCS overlooks SC Law's other allegations of breach of contract such as TCS's refusal to certify the destruction of confidential information and failing to protect the confidentiality of information "in at least the same manner as a fiduciary of [SC Law]." *Compl.* ¶ 44. Such obligations are contemplated by the terms of the Non-Disclosure Agreement and SC Law's allegation that it sustained damage for TCS's failure to adhere to those terms states a claim for breach of contract under California law. *See Acoustics, Inc. v. Trepte Construction Co.,* 14 Cal. App. 3d 887, 913, 92 Cal. Rptr. 723 (1971) (To state a claim for breach of contract, a plaintiff must allege the following essential elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the

---

[2] TCS also argues that even if there is a non-compete clause in the Non-Disclosure Agreement, it would nevertheless be unenforceable as contrary to "California's well-entrenched public policy against[] broad non-compete obligations." *Mot.* 9:11-17. TCS cites the California Supreme Court's decision in *Edwards v. Arthur Andersen LLP* for that proposition, but fails to recognize the express statutory carve out noted by the Court for "noncompetition agreements in the sale or dissolution of corporations . . . partnerships . . . and limited liability corporations." *See* 44 Cal. 4th 937, 945-46, 81 Cal. Rptr. 3d 282 (Cal. 2008). Moreover, the *Arthur Anderson* decision and the California Code provisions permitting non-compete agreements in the sale of corporations, partnerships and limited liability corporations all deal with a selling person or entity's agreement not to compete against the purchasing entity. That is not this case. *See Opp'n* 17:9-10. Here, there is a potential buyer agreeing with a potential seller that it would not use the potential seller's confidential information to pursue other business opportunities.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

resulting damages to plaintiff.). As a result, TCS's Motion to Dismiss SC Law's first cause of action for breach of contract is DENIED.

    B.    <u>Breach of Implied Covenant of Good Faith and Fair Dealing</u>

SC Law's second cause of action is for breach of the implied covenant of good faith and fair dealing. Specifically, SC Law alleges that:

> TCS breached the implied covenant of good faith and fair dealing when it failed to return or certify the destruction of the plaintiff's documentary Information and used such Information and the other confidential data and trade secrets plaintiff orally conveyed to it for the purpose of facilitating its affiliation transaction with TCS. In addition, TCS promised directly or indirectly that it would not pursue a transaction with plaintiff's competitor and in doing so breached the implied covenant.

*Compl.* ¶ 49. TCS argues that SC Law has failed to state a claim here because "[n]o implied covenant of good faith and fair dealing can be read to forbid acts and conduct that are authorized by the express terms of the contract," and that "it is universally recognized that the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Mot.* 9:18-10:6 (quoting *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992)). The Court agrees and clarifies.

TCS is correct that SC Law has failed to state a claim to the extent that the implied covenant claim is based on an alleged promise made by TCS "to not pursue a transaction with plaintiff's competitor." *Compl.* ¶ 27. Because the Non-Disclosure Agreement explicitly states that, "[n]otwithstanding anything in this Agreement to the contrary, nothing in this Agreement shall be deemed to inhibit or prohibit either party from pursuing business opportunities or other arrangements or endeavors of any kind so long as the terms and provisions of this agreement are maintained inviolate," *id.*, Ex. 1, ¶ 10, SC Law's allegations effectively "circumscribe[e ] the purposes and express terms of the contract," *Carma Developers*, 2 Cal. 4th at 373. However, this alone does not warrant dismissal of SC Law's entire implied covenant claim as the allegations in the Complaint do more than allege breach based on the viability of a purported non-competition covenant.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#14

CIVIL MINUTES - GENERAL

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

Nevertheless, the remainder of SC Law's implied covenant allegations are insufficient because California law requires that a claim for breach of the implied covenant of good faith and fair dealing "go beyond the statement of a mere contract breach" and not "rel[y] on the same alleged acts [or] simply seek the same damages or other relief already claimed in a companion contract cause of action." *Careau & Co. v. Sec. Pac.,* 222 Cal. App. 3d 1371, 1395, 272 Cal. Rptr. 387 (1990). SC Law's Complaint fails to meet this requirement. The implied covenant of good faith and fair dealing claim is based on, in addition to that previously discussed, misuse of confidential information and failure to return or certify the destruction of confidential information at the termination of the relationship. This conduct is duplicative of conduct prohibited by the Non-Disclosure Agreement. Thus the proper vehicle to obtain a remedy is breach of contract, not breach of the implied covenant of good faith and fair dealing. *See Compl.,* Ex. 1, ¶¶ 1, 5. The Court GRANTS TCS's Motion to Dismiss SC Law's second cause of action for breach of the implied covenant of good faith and fair dealing.

       C.    <u>Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty</u>

TCS next moves to dismiss Plaintiff's third cause of action for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. TCS's argument is simply that because SC Law has failed to properly allege the existence of a fiduciary relationship between SC Law and TCS, SC Law cannot state a claim for breach of fiduciary duty against TCS. *See Mot.* 4:16-25. TCS is correct.

SC Law alleges that the Non-Disclosure Agreement itself created a fiduciary relationship between it and TCS. *See Compl.* ¶ 54; *Opp'n* 14:1-12, 15:6-8 (addressing the plain meaning of the Non-Disclosure Agreement). However, "before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 386, 75 Cal. Rptr. 3d 333 (Cal. 2008) (concluding that without a mutually beneficial contract—i.e., not a contract only benefiting one party—a legally imposed fiduciary relationship, or a "knowing" undertaking of fiduciary obligations, there was no fiduciary relationship created); *see also First Citizens Federal Sav. And Loan Assn' v. Worthen Bank and Trust*, 919 F.2d 510, 514 (9th Cir. 1990) (To create a fiduciary relationship by contract, the language must "clearly establish a fiduciary relationship."). This is not the case here.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

SC Law does not allege the existence of a fiduciary relationship imposed by law, meaning that in order for a fiduciary relationship to have existed between the parties, TCS must have "knowingly" entered into such a relationship. SC Law insists that the language of the Non-Disclosure agreement is clear and that it alone creates the alleged fiduciary relationship between the parties, or, in the alternative, the language is ambiguous and the question is not appropriate for determination at this stage of litigation. *See Opp'n* 14:1-16:3.

The Court agrees that the language of the Non-Disclosure Agreement is clear, but disagrees that it means what SC Law suggests it means. Paragraph 2 of the Agreement merely set standards for the conduct of the parties, breach of which would lead to contractual remedies. It did not, however, establish a fiduciary relationship, breach of which would lead to non-contractual remedies. The legally relevant language of the Agreement is clear and underscores this point. It requires that TCS act "with at least the same diligence and care as would be required of [TCS] *as if it were* a fiduciary of SC Law." *Contract* ¶ 2. This is significantly different from the "act as a trustee with fiduciary duties" contract language in *Women's Federal Savings*, which the Ninth Circuit held clearly created a fiduciary relationship. Here, the contract presupposes that the parties are not in a fiduciary relationship and sets forth a standard for exercising control over SC Law's information, breach of which would breach the contract. Thus, SC Law has not properly alleged the existence of a fiduciary relationship between TCS and SC Law, and has not properly alleged breach of fiduciary duties. Moreover, because SC Law has not stated a claim for breach of fiduciary duty, SC Law has not stated a claim for aiding and abetting breach of fiduciary duty. *See Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 574-75, 32 Cal. Rptr. 3d 244 (Cal. Ct. App. 2005) (explaining that because aiding and abetting liability "depends upon the actual commission of a tort," there can be no liability for aiding and abetting breach of fiduciary duty without a breach of fiduciary duty). Accordingly, the Court GRANTS TCS's Motion to Dismiss claim three for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty.

D. <u>Negligent Misrepresentation</u>

SC Law's fourth cause of action is for negligent misrepresentation. Negligent misrepresentation is a tort separate and apart from negligence, and attaches liability to a person who "makes false statements, honestly believing that they are true, but without reasonable ground for such belief." *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 407-08, 11 Cal. Rptr. 2d 51 (Cal. 1992) (citations and quotations omitted). Thus, to plead negligent misrepresentation, a

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

plaintiff must allege "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962, 226 Cal. Rptr. 532 (Ct. App. 1986) (citing 4 Witkin, Summary of Cal. Law §§ 480-82 (8th ed. 1974)).

The basis for SC Law's negligent misrepresentation claim is a series of "affirmative representations" that TCS "intended to become plaintiff's ally and [join together to] compete with [SB&V]," and "acquire" SC Law. *Compl.* ¶ 63 ("These affirmative representations carried an implied promise and representation that defendants would not pursue an affiliation with SB&V."). Yet, SC Law does not identify any particular representations that TCS made to SC Law, or suggest that such statements, if there were any, were statements of "past or existing material fact." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962, 226 Cal. Rptr. 532 (Cal. Ct. App. 1986). In addition, the conduct complained of in SC Law's negligent misrepresentation claim is nothing more breaching an "implied promise" that TCS would not pursue other business opportunities. Implied assertions, however, are not enough to state a claim for negligent misrepresentation. *See Wilson v. Century 21 Great W. Realty*, 15 Cal. App. 4th 298, 306, 18 Cal. Rptr. 779 (Cal. Ct. App. 1993) ("An implied assertion or representation is not enough.").[3] As a result, the Court GRANTS TCS's Motion to Dismiss Plaintiff's fourth cause of action for negligent misrepresentation.

---

[3] The Complaint also bases its negligent misrepresentation claim on the allegation that TCS failed to reveal the fact that it intended to "open discussions" with SB&V. As negligent misrepresentation requires "a positive assertion or assertion of fact," SC Law cannot reframe its failure to disclose allegations as a negligent misrepresentation claim unless it also alleges that TCS had a duty to disclose. *See Wilson*, 15 Cal. App. 4th at 306; *Byrum v. Brand*, 219 Cal. App. 3d 926, 942, 268 Cal. Rptr. 609 (Cal. Ct. App. 1990) ("A representation is an essential element of a cause of action for negligent misrepresentation."); *see also Los Angeles Unified School Dist. v. Great American Ins. Co.*, 49 Cal.4th 739, 750 n.5, 112 Cal. Rptr. 3d 230 (2010) (explaining that negligent misrepresentation may include the "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact").

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#14**

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

E.  Misappropriation of Trade Secrets in Violation of California Civil Code § 3426.1(d)

TCS next moves to dismiss SC Law's fifth cause of action for misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426, *et seq*. Specifically, the Complaint alleges that TCS "gained access to plaintiff's most valuable trade secrets and confidential information," that it "misappropriated and/or threaten[s] to misappropriate plaintiff's trade secrets without plaintiff's consent," and that TCS "intend[s] to disclose plaintiff's trade secrets and confidential information to others, including person employed by [SB&V]." *Compl.* ¶¶ 71-73.

In order to state a claim under CUTSA, a plaintiff must allege "actual or threatened misappropriation" of a trade secret. *FLIR Systems, Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1279, 95 Cal. Rptr. 3d 307 (Cal. Ct. App. 2009) (citing Cal. Civil Code § 3426.2(a)). Alleging "[m]ere possession of trade secrets" is "not enough." *Id.* While actual misappropriation is "generally speaking, improper acquisition of a trade secret or its nonconsensual use or disclosure," *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1457, 125 Cal. Rptr. 2d 277 (Cal. Ct. App. 2002), threatened misappropriation "means a threat by a defendant to misuse trade secrets, manifested by words or conduct, where the evidence indicates imminent misuse," *FLIR Systems*, 174 Cal. App. 4th at 1279. A trade secret is defined by California law as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

TCS argues that SC Law's CUTSA claim fails for two reasons: first, that SC Law does not properly plead that the information it conveyed to TCS falls within the reach of CUTSA as a protectable trade secret, and second that SC Law does not allege that TCS ever disclosed plaintiff's information or used the information in a way that violates the Non-Disclosure Agreement. *See Mot.* 10:11-12:8. The Court agrees with both.

While SC Law identifies a number of documents it allowed TCS to access, including the schools by-laws, corporate tax returns, minutes of the school's board of director meetings, real estate leases, and, among others, faculty and student policy manuals, it does not identify which

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

of those contain trade secrets nor describe those things "with sufficient particularity to separate [them] from matters of general knowledge." *Imax Corp. v. Cinema Techs., Inc.,* 152 F.3d 1161, 1164-65 (9th Cir. 1998); *see also Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 221, 109 Cal. Rptr. 3d 27 (Cal. Ct. App. 2010), *rev'd on other grounds*, *Kwikset Corp. v. Sup. Ct.*, 151 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (Cal. 2011) ("It is critical to any CUTSA cause of action . . . that the information claimed to have been misappropriated be clearly identified."). SC Law's recitation of California's definition of a trade secret is of no assistance as "[a] pleading that offers 'labels and conclusions' or []formulaic recitation[s] of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1948; *compare Compl.* ¶ 71, *with* Cal. Civ. Code § 3426.1.

In addition, SC Law fails to allege TCS's nonconsensual misuse of SC Law's trade secret information, or that TCS has disclosed or, by words or conduct, has threatened to disclose the unidentified trade secrets.[4] The Non-Disclosure Agreement provides the approved uses of SC Law's information and the Complaint alleges no facts that suggest anything other than Agreement-compliant use. *See, e.g.*, *Compl.*, Ex. 1, ¶ 1 ("[TCS] shall not use, reproduce, or directly or indirectly disclose or allow access to the information except as required to facilitate the [transaction]."). SC Law's allegation that, upon information and belief, TCS "intend[s] to disclose" SC Law's trade secrets does nothing to save the claim from dismissal. Merely reciting SC Law's belief that TCS intends to disclose information without any facts plausibly suggesting "words or conduct" that would indicate imminent misuse falls well short of what is required to plead a CUTSA violation. *See FLIR Systems*, 174 Cal. App. 4th at 1279 (threatened misappropriation "means a threat by a defendant to misuse trade secrets, manifested by words or conduct, where the evidence indicates imminent misuse").

As a result, the Court GRANTS TCS's Motion to Dismiss Plaintiff's fifth cause of action for misappropriation of trade secrets in violation of CUTSA.[5]

    F.    <u>Violations of the Sherman Antitrust Act and California's Cartwright Act</u>

---

[4] SC Law does not contest this point in their Opposition.

[5] Because the Court dismisses SC Law's CUTSA claims as insufficiently pleaded, it need not reach TCS's argument that SC Law's fifth cause of action is actually one for "inevitable disclosure." *See Mot.* 12:9-17. Similarly, the Court need not address the pre-emptive effect that a properly alleged CUTSA claim would have on the remainder of SC Law's claims, as argued by TCS.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

    SC Law's Complaint includes three federal antitrust claims under section 2 of the Sherman Antitrust Act: (1) attempted monopolization; (2) monopolization; and (3) conspiracy to monopolize. According to SC Law, the gravamen of the antitrust claims is that "[a]s a result of TSC's affiliation and misappropriation of plaintiff's trade secrets, [SB&V] and TCS are poised to increase [SB&V's] market share significantly and eliminate the lower cost provider of law school education in the relevant market. Since the barriers to entry are so great, no other law school stands a chance of filling in the breach leaving TCS/[SB&V] as the only option available to law students." *Opp'n* 22:12-16. In other words, by seeking to merge with SB&V, "TCS has committed various acts of wrongdoing in a deliberate attempt to drive [SC Law] out of the evening law school market." *Compl.* ¶ 81.

    TCS argues that each of SC Law's antitrust claims fail because SC Law cannot establish a cognizable antitrust injury. The Court agrees.[6]

    Section 2 of the Sherman Antitrust Act states that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2. In order to state a claim for monopolization under Section 2, a plaintiff must allege (1) possession of monopoly power in the relevant market, (2) willful acquisition or maintenance of that power, and (3) causal antitrust injury. *Pacific Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992). Similarly, attempt to monopolize and conspiracy to monopolize also have a "causal antitrust injury" component. *See id.* In an attempt to preserve "competition, not competitors," *Brown Shoe Co. v. United States,*

---

[6] SC Law's only real argument in support of its antitrust claims is that its Complaint does more to allege an antitrust violation than what the District Court for the Eastern District of California permitted in *Axiom Advisers & Consultants, Inc. v. School Innovations & Advocacy, Inc.*, No. CV 05-2395, 2006 WL 1049997 (E.D. Cal. March 20, 2006). *See Opp'n* 22:18-27. In that case, the Court held that an allegation which stated, "[defendant's] conduct has injured competition and consumers and its acts have an anticompetitive effect of harming the competitive process, limiting consumer choice, and harming consumers" was sufficient to plead antitrust injury. *Axiom Advisers*, 2006 WL 1049997, at *8. That case was decided before the Supreme Court's decisions in *Iqbal* and *Twombly*, and the Court is concerned that the case would come out differently now.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

370 U.S. 294, 344, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), the antitrust laws require that a plaintiff show such "antitrust injury," which is "an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful," *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (internal citations and quotations omitted). The Ninth Circuit has identified four requirements for antitrust injury: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Id.*

SC Law's monopolization claims fail for a number of reasons, the first of which is failure to allege unlawful conduct of the type the antitrust laws were intended to prevent. In *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104 (1986), the Supreme Court considered a plaintiff's allegation that if its competitors were allowed to merge, they would be able to increase efficiency and reduce prices, eventually driving plaintiff out of business and thus reducing competition. 479 U.S. at 114-17. The Supreme Court rejected the allegation that such conduct constitutes an antitrust injury to a competitor because "[t]he kind of competition that [the plaintiff] alleges here, competition for increased market share, is not an activity forbidden by the antitrust laws." *Id.* at 116. Stated another way, the Supreme Court explained that the laws are not designed "to protect small businesses from the loss of profits due to continued competition, but only against the loss of profits from practices forbidden by the antitrust laws." *Id.*

The facts as alleged in SC Law's complaint fit nicely within the Supreme Court's *Cargill* decision. Specifically, SC Law alleges that the TCS and SB&V affiliation will enable SB&V to add new resources, become more efficient, add online courses and additional law programs, provide administrative and student support services, provide marketing assistance, and seek Western Association of Schools and Colleges accreditation that would "bring access to federal student financial aid programs" and make SB&V more attractive to students in need of financial assistance. *See Compl.* ¶¶ 30, 36. The allegations in the Complaint suggest that the SB&V/TCS affiliation is meant to promote competition for increased market share, "an activity [not] forbidden by the antitrust laws." *See also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (holding that a smaller entity's lost profits due to increased competition by a larger entity is not an antitrust injury).

Moreover, these same allegations, even if accepted as true, amount to nothing more than product or service improvement as a way to increase market share, another act that does not

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#14**

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

alone give rise to a necessary antitrust injury. In *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group*, 592 F.3d 991 (9th Cir. 2010), the Ninth Circuit explained that a "design change that improves a product by providing a new benefit to consumers does not violate Section 2 absent some associated anticompetitive conduct." 592 F.3d at 998-99. Having explained that, the Ninth Circuit held that plaintiff's failed to establish a Sherman Act violation where Tyco improved its products without otherwise manipulating the market. *Id.* at 1003. The same is true here. SC Law's Complaint alleges only that the improvements made to the educational services offered by SB&V will push it, SB&V's sole competitor in the tri-county region, out of business. Under *Allied Orthopedic*, SC Law has not stated a cognizable antitrust injury.

Finally, SC Law's general failure to allege harm to the market, as opposed to harm to the school, is another basis for concluding that SC Law has failed to state its monopolization claims. As mentioned, "[t]he antitrust laws were enacted for the protection of *competition,* not *competitors.*" *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 812 (9th Cir. 1988), *quoting Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) (emphasis in original). "[S]ection one claimants must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market." *Les Shockley Racing, Inc. v. National Hot Rod Ass'n,* 884 F.2d 504, 508 (9th Cir. 1989). While SC Law alleges in a conclusory fashion that the market will be harmed, *see Compl.* ¶ 82, the real harm alleged is to SC Law as a law school, *see, e.g., id.* ¶ 31 ("With TCS's vast resources, including its marketing savvy, [SC Law] has no chance of continuing to differentiate itself successfully."); *id.* ¶ 33 ("With its present resources, [SC Law] cannot possibly offer the services promised by [SB&V] to current and prospective students or match [SB&V's] likely administrative and technological innovations. In addition TCS's affiliation with [SB&V] has reduced the likelihood to *nil* that [SC Law] might be perceived as an attractive acquisition candidate to another large education organization."); *id.* ¶ 36 ("Without injunctive relief, [SC Law] will lose the ability to compete, suffer a downturn in its enrollment and may go out of business.").

Because SC Law's ninth claim for relief for violation of California's Cartwright Act is based on the same conduct that gives rise to its Sherman Antitrust Act claims, it too must be dismissed. *See Nova Designs, Inc. v. Scuba Retailers Ass'n,* 202 F.3d 1088, 1091 (9th Cir.2000); *Mailand v. Burckle,* 20 Cal.3d 367, 375, 143 Cal.Rptr. 1, 5, 572 P.2d 1142, 1147 (1978) (analysis under California's antitrust law mirrors the analysis under federal law). As a result,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#14**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

the Court GRANTS TCS's Motion to Dismiss claims six, seven, eight and nine for federal and state antitrust law violations.

    G.    <u>Violation of California's Unfair Competition Law</u>

SC Law's final cause of action is for violation of California's Unfair Competition Law ("UCL"). The UCL prohibits "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," as well as any act prohibited by California's false advertising statute. *See Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.,* 421 F.3d 981, 985 (9th Cir.2005) ( *quoting* Cal. Bus. & Prof.Code § 17200). An "unlawful" business act under § 17200 is any business practice that is prohibited by law, whether "civil or criminal, statutory or judicially made ... federal, state or local." *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1474, 49 Cal.Rptr.3d 227 (2006) (citations omitted).

In this case, SC Law alleges that that TCS's unlawful conduct, "including but not limited to violation of the Sherman Act . . . California Uniform Trade Secrets Act," is the basis for its UCL claim. *Compl.* ¶¶ 96-97. At the hearing, SC Law confirmed that its UCL claim is based on all potentially "unlawful" allegations in the Complaint, including breach of contract. While the Court has determined that SC Law has sufficiently stated a breach of contract claim,[7] this alone is not sufficient to also state an unlawful UCL claim. This is because a breach of contract claim "may only form the basis of a section 17200 claim if the breach itself is 'unlawful, unfair, or fraudulent.'" *Spring Design, Inc. v. Barnesandnoble.com, LLC*, No. CV 09-5185 JW, 2010 WL 5422556, at *9 (N.D. Cal. Dec. 27, 2010) (citing *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645, 72 Cal. Rptr. 3d 903 (Ct. App. 2008)). Without adequately alleging any unlawful conduct sufficient to give rise to a UCL claim, the Court GRANTS TCS's Motion to Dismiss SC Law's tenth cause of action for violation of California's Unfair Competition Law.

IV.    <u>Conclusion</u>

Based on the foregoing, the Court DENIES TCS's Motion to Dismiss SC Law's breach of contract claim (claim one) and GRANTS TCS's Motion to Dismiss SC Law's breach of implied

---

[7] TCS also argues that SC Law lacks standing to assert a UCL claim because it has not alleged an "actual injury to date" under state or federal antitrust law. *See Opp'n* 24:26-25:5. This argument ignores the injury SC Law suffered as a result of TCS's alleged breach of contract, which is one basis for the UCL claim.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**#14**

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-8026 PSG (AJWx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | Southern California Institute of Law v. TCS Education System, *et al.* | | |

covenant of good faith and fair dealing (claim two), breach of fiduciary duty and aiding and abetting breach of fiduciary duty (claim three), negligent misrepresentation (claim four), misappropriation of trade secrets in violation of California Civil Code § 3426, *et seq.* (claim five), attempted monopolization in violation of § 2 of the Sherman Antitrust Act (claim six), monopolization in violation of § 2 of the Sherman Antitrust Act (claim seven), conspiracy to monopolize in violation of § 2 of the Sherman Antitrust Act (claim eight), violation of California's Cartwright Act (claim nine), and violation of California's Unfair Competition Law (claim ten) WITHOUT PREJUDICE.

    SC Law must file an amended complaint by **April 26, 2011** or the Court will dismiss those claims WITH PREJUDICE.